IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | 8:09CR223 |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | MEMORANDUM AND ORDER |
| AUDREY WOLFE, ) | |
| ) | |
| Defendant. ) | |

This matter is before the court on the defendant's objections, Filing No. 31, to the report and recommendation ("R&R") of the magistrate judge, Filing No. 25, concerning the defendant's motion to suppress statements and evidence, Filing No. 17. Count I of the Indictment charges the defendant, an American Indian, with committing an assault against A.D., an American Indian, by running over her with an automobile in violation of 18 U.S.C. § 1153 and 113(a)(6). Count II charges defendant with using a dangerous weapon, an automobile, in connection with the crime of assault alleged in Count I in violation of 18 U.S.C. § 1153 and 113(a)(3). Filing No. 1.

Under 28 U.S.C. § 636(b)(1)(C), the court makes a de novo determination of those portions of the report and recommendation to which the parties object. *United States v. Lothridge*, 324 F.3d 599, 600-01 (8th Cir. 2003). The court has conducted a de novo review of the record and exhibits, including the transcript of the suppression hearing, Filing No. 28, (Tr."). The court agrees with the magistrate judge's recitation of the facts and of the law. The court finds the defendant's objections to the R&R should be overruled and the defendant's motion to suppress denied.

On or about April 17, 2009, Officer Melvin Whitebird, a police officer with the Winnebego Bureau of Indian Affairs, received a dispatch call that the defendant was involved in an assault and that someone had been run over by an automobile. Officer Whitebird did not know if the defendant was a victim or a suspect at that time. Tr. 8:10-12. Officer Whitebird drove to the home of Karen Wolfe, defendant's mother. Karen Wolfe told the officer that her daughter, the defendant, was in the house and gave the officer permission to enter the house. Whitebird agreed that Wolfe was "somewhat" of a suspect at that time. Tr. 14:3-7. Officer Blaine Flynn also arrived at the home of Karen Wolfe. He testified that the purpose of the visit was to take defendant in for questioning. Tr. at 24:20-25:4. Officer Flynn knew defendant was a suspect based on a phone call he received at home. Tr. 25:10-15. Officer Whitebird did not receive such a phone call. Officer Whitebird noted that defendant had facial injuries, had bloodshot eyes and smelled of alcohol. He believed that she was coherent enough to have a conversation with him. When Officer Flynn entered the home, Officer Whitebird was already questioning the defendant about the incident that occurred regarding the assault. Neither officer advised defendant of her *Miranda* rights. See *Miranda v. Arizona*, 384 U.S. 436 (1966). Officer Flynn did not question the defendant. Officer Whitebird then asked defendant to come outside, because she was going to be detained for questioning. No conversation occurred on the way to the office. At the police station defendant was asked to submit to a breath test. She agreed and signed a consent form. Apparently it did not work, as defendant has asthma, and she could not blow enough air into the device.

Eventually, the officers took defendant to the hospital per her request. While at the hospital, she refused to take a blood test, apparently because she is afraid of needles.

She then returned to the police office. By that point in time, FBI Special Agent Jeff Howard had arrived to assist the officers with this case. When asked to do so by Special Agent Howard, defendant agreed to submit to another breath test. Her blood alcohol level at that time was .102 which was approximately three and one-half hours after the officers first visited her mother's home.

During the second breath test, Agent Howard read defendant her *Miranda* rights, and she signed an advice of rights form. Agent Howard spoke with defendant for about 15 to 20 minutes. Agent Howard asked defendant to describe her level of intoxication at the time the incident occurred and defendant stated she was an 8 out of 10. Defendant then signed a form giving consent for the officers to search her vehicle. The officers, thereafter, took defendant to the Macy jail. She was not questioned on the ride to the jail.

On April 23, 2009, Officer Howard met with defendant at the Macy jail to obtain a buccal swab for DNA purposes. He once again advised defendant of her rights and had her sign an advice of rights form. Officer Howard spoke with defendant for about fifteen minutes while at the jail.

The magistrate judge determined that defendant was subjected to a custodial interrogation at her mother's home on April 17, 2009; therefore, the magistrate judge suppressed any statements made during that encounter for failure to advise defendant of her *Miranda* rights.[1] However, the magistrate judge also determined that those statements were voluntary, as defendant was not so intoxicated that she did not understand the situation.[2] Tr. 77:1-4.

---

[1] The government did not object to this portion of the report and recommendation.

[2] It is unclear from the record if defendant actually made any incriminating statements while at her mother's home.

3

As to the statements made by defendant at the police department on April 17, 2009, and also at the Macy jail on April 23, 2009, the magistrate judge found that *Miranda* applied, but that defendant knowingly and voluntarily waived these rights prior to questioning. Further, the magistrate judge concluded that these statements were also voluntary.

Defendant objects to the findings of the magistrate judge with regard to the statements made at the police department on April 17 and the statements made at the Macy jail on April 23. She argues that these statements are the fruit of the initial constitutional violation. *Wong Sun v. United States*, 371 U.S. 471, 488 (1963). The second statement occurred approximately three hours after the unwarned statement. *See United States v. Carter*, 884 F.2d 368, 373 (8th Cir. 1989) (second confession came on the heals of first tainted confession, and review of surrounding circumstances convinced the court that second confession would not be allowed). Defendant argues that she had constant police presence from her mother's home, to the police department, to the hospital, and back to the police department. Thus, defendant argues, the chain from her mother's home to her second set of statements was never broken.

The question is whether, once a defendant has made incriminating statements, the *Miranda* warnings can, thereafter, effectively advise defendant about her choice to not incriminate herself. *Missouri v. Seibert*, 542 U.S. 600, 612 (2004). In *Seibert*, the Court stated: "Upon hearing warnings only in the aftermath of interrogation and just after making a confession, a suspect would hardly think he had a genuine right to remain silent, let alone persist in so believing once the police began to lead him over the same ground again." *Id*.

4

at 613. Defendant argues that the *Seibert* case supports suppression of her post-*Miranda* statements.

The magistrate judge concluded that *Seibert* did not apply, as the magistrate judge did not believe the lack of initial *Miranda* warnings was deliberate. Defendant agrees that the Eighth Circuit requires a showing of deliberate failure to give *Miranda* warnings when it applies the *Seibert* test. *United States v. Torres-Lona*, 491 F.3d 750, 758 (8th Cir. 2007) (when officers have no reason to believe at the outset that the suspect will be charged, or when officers are not trying to extract a confession, but are processing, or when officers do not use the initial statement to cause further statements, there is no showing of deliberateness so as to require suppression under *Miranda)*. Here Officer Whitebird did not know if defendant was a victim or a suspect when he arrived. Further, Officer Flynn did not interrogate the defendant. The defendant has failed to show that the failure to give *Miranda* warnings was deliberate. The court has carefully reviewed the record and the findings of fact and conclusions of law as set forth by the magistrate judge. The court finds the magistrate judge is correct in all respects. Accordingly, the court will adopt the portion of the report and recommendation as it relates to this issue.

Defendant next argues that even if this court does not suppress her statements under *Miranda* and *Seibert*, it should suppress the statements as they were involuntary under the Fifth Amendment. The court must look at the totality of the circumstances when determining whether the statements were voluntarily made. *United States v. LeBrun*, 363 F.3d 715, 724 (8th Cir. 2004). 18 U.S.C. § 3501(b) sets forth the factors to be considered in determining whether a confession was voluntary:

> The trial judge in determining the issue of voluntariness shall take into consideration all the circumstances surrounding the giving of the confession,

5

> including (1) the time elapsing between arrest and arraignment of the defendant making the confession, if it was made after arrest and before arraignment; (2) whether such defendant knew the nature of the offense with which he was charged or of which he was suspected at the time of making the confession; (3) whether or not such defendant was advised or knew that he was not required to make any statement and that any such statement can be used against him; (4) whether or not such defendant had been advised prior to questioning of his right to assistance of counsel; and (5) whether or not such defendant was without the assistance of counsel when questioned and when giving such confession. The presence or absence of any of the above-mentioned factors to be taken into consideration by the judge need not be conclusive on the issue of voluntariness of the confession.

18 U.S.C. § 3501(b). The Eighth Circuit has set forth specific factors to consider when determining voluntariness, including the following characteristics of the suspect:

> (1) their age; (2) their general intelligence and education; (3) whether they were intoxicated or under the influence of drugs when consenting; (4) whether they consented after being informed of their right to withhold consent or of their *Miranda* rights; and (5) whether, because they had been previously arrested, they were aware of the protections afforded to suspected criminals by the legal system.

*United States v. Bradley,* 234 F.3d 363, 366 (8th Cir. 2000), *citing United States v. Chaidez*, 906 F.2d 377, 381 (8th Cir. 1990). Characteristics of the environment in which consent is given are also relevant, including:

> whether the person who consented (1) was detained and questioned for a long or short time; (2) was threatened, physically intimidated, or punished by the police; (3) relied upon promises or misrepresentations made by the police; (4) was in custody or under arrest when the consent was given; (5) was in a public or a secluded place; or (6) either objected to the search or stood by silently while the search occurred.

*Id*. (internal citations omitted).  Defendant argues that she did not give her first statements voluntarily as she had not received her *Miranda* rights; also, both her first and second statements were given while under the influence of alcohol.  Further, all three statements were given while in a police-dominated environment.  And finally, the second and third statements were elicited after an involuntary waiver of her *Miranda* rights.

6

The magistrate judge applied the appropriate legal tests and determined that the statements given following both sets of *Miranda* warnings were voluntarily made. He found no evidence that defendant was so intoxicated that she could not understand the questions asked of her. He further found that consent was freely given. The court has carefully reviewed the record and the findings of fact and conclusions of law as set forth by the magistrate judge. The court finds the magistrate judge is correct in all respects. Accordingly, the court will adopt the portion of the report and recommendation as it relates to this issue.

THEREFORE, IT IS ORDERED:

1. The defendant's motion to suppress, Filing No. 17, is denied.

2. The defendant's objections, Filing No. 31, to the report and recommendation of the magistrate judge are overruled.

3. The report and recommendation of the magistrate judge, Filing Nos. 25 and 28, is adopted in its entirety.

DATED this 15th day of October, 2009.

BY THE COURT:

s/ Joseph F. Bataillon
Chief United States District Judge